UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY HALE-CUSANELLI,<br>Address Filed Under Seal,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br>c/o U.S. Attorney's Office, District of Columbia,<br>601 D Street NW, Washington, DC 20530,<br><br>DANIEL J. MEYERS, in his individual capacity,<br><br>and JOHN DOE AGENTS 1–9, special agents of the Naval Criminal Investigative Service and the Federal Bureau of Investigation, in their individual capacities,<br><br>Defendants. | Civil Action No.<br><br>**<u>COMPLAINT</u>**<br><br>JURY TRIAL DEMANDED AS TO THE THIRD CAUSE OF ACTION |

Plaintiff Timothy Hale-Cusanelli ("<u>Plaintiff</u>"), by and through his attorneys, Raiser, Kenniff & Lonstein, for his Complaint against the United States of America (the "<u>United States</u>"), Daniel J. Meyers ("<u>Meyers</u>"), and John Doe Agents 1–9 (the "<u>Doe Agents</u>" and, together with Meyers, the "<u>Individual Defendants</u>"), alleges as follows:

## <u>NATURE OF THE ACTION</u>

1. This is an action for money damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ("<u>FTCA</u>"), against the United States, and under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against individual federal investigative agents.

2. While Plaintiff was in the custody of the Federal Bureau of Prisons ("<u>BOP</u>") at the Federal Correctional Institution at Fort Dix, New Jersey ("<u>FCI Fort Dix</u>"), a BOP clinician

determined that Plaintiff's persistent ear infection required evaluation by an ear, nose and throat specialist ("ENT") and referred him for that evaluation. BOP denied the referral. BOP instead prescribed another course of antibiotics after prior courses had failed, and released Plaintiff without ever providing specialist care. Plaintiff has sustained permanent hearing loss.

3. Separately, federal investigative agents used the criminal process initiated against Plaintiff arising from the events of January 6, 2021, not to investigate the elements of any charged offense, but to assemble and present a portrait of Plaintiff's speech, beliefs and associations for the purpose of securing and prolonging his detention.

4. Plaintiff was continuously detained from his arrest on January 15, 2021 until his release on or about December 15, 2023, a period of approximately 1,064 days. His conviction on the only felony count, for obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2), was vacated on December 19, 2024 following *Fischer v. United States*, 603 U.S. 480 (2024). The remaining counts of the indictment were dismissed with prejudice on January 24, 2025.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's claims against the United States pursuant to 28 U.S.C. § 1346(b)(1), and over Plaintiff's claims against the Individual Defendants pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this District as to the Second Cause of Action pursuant to 28 U.S.C. § 1402(b), because the act complained of, the use of criminal process for an improper purpose, occurred in the District of Columbia. The criminal process at issue was invoked, and its abuse consummated, in the detention proceedings in *United States v. Hale-Cusanelli*, No. 1:21-cr-00037-TNM (D.D.C.) (the "Criminal Action"), for which the Individual Defendants prepared the materials described below.

7. Venue is proper in this District as to the Third Cause of Action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to that claim, including the presentation to this Court of the evidence and information on which Plaintiff was detained, occurred in this District.

8. Venue is proper in this District as to the First Cause of Action under the doctrine of pendent venue. That claim arises out of a common nucleus of operative fact with the Second and Third Causes of Action. Plaintiff's ear infection began while he was detained in this District pending trial in the Criminal Action, and continued without interruption through his confinement at FCI Fort Dix. Plaintiff was confined at FCI Fort Dix pursuant to the judgment of this Court in the Criminal Action, which recommended that designation, and his confinement there was a continuation of the single, uninterrupted period of federal custody that began with the arrest and detention challenged in the Second and Third Causes of Action. All three causes of action seek damages for injuries sustained during that period of custody, and will involve overlapping evidence concerning its course, conditions and consequences. Adjudicating all of Plaintiff's claims in a single action serves judicial economy and avoids piecemeal litigation of claims arising from the same period of federal custody.

9. This Court has personal jurisdiction over the Individual Defendants because they purposefully directed their conduct at this District by preparing investigative materials concerning Plaintiff for, and transmitting them to, the United States Attorney's Office for the District of Columbia for use in proceedings before this Court, and because Plaintiff's claims against them arise from that conduct.

## ADMINISTRATIVE EXHAUSTION

10. Plaintiff timely presented his claims to the United States Department of Justice by executed Standard Forms 95 ("SF-95s"), each bearing Plaintiff's original signature and accompanied by a supplemental statement, sent by certified mail to the Department of Justice, Civil Division, Torts Branch, Federal Tort Claims Act Section, P.O. Box 888, Benjamin Franklin Station, Washington, D.C. 20044.

11. The Department of Justice received Plaintiff's claims no later than October 6, 2025.

12. Plaintiff's claims described, among other things, his prosecution and detention, the conduct of federal agents in connection therewith, and the permanent hearing loss he sustained from untreated infection while in federal custody, and stated a sum certain for each claim.

13. No federal agency has made final disposition of Plaintiff's claims, and more than six months have elapsed since they were presented. Plaintiff therefore elects to deem his claims finally denied pursuant to 28 U.S.C. § 2675(a).

14. Plaintiff's claims were presented within two years after they accrued. Plaintiff's claim arising from his medical care did not accrue until Plaintiff knew of his permanent hearing loss and its cause.

## PARTIES

15. Plaintiff is a citizen of the United States who resides in the State of New Jersey.

16. Defendant United States is sued under the FTCA for the negligent and wrongful acts and omissions of its employees, including employees of BOP, the Naval Criminal Investigative Service ("NCIS") and the Federal Bureau of Investigation ("FBI"), acting within the scope of their office or employment.

17. Defendant Meyers is, and at all relevant times was, a Special Agent of NCIS. Meyers swore the statement of facts supporting the Criminal Complaint against Plaintiff and

testified for the government at Plaintiff's trial. Upon information and belief, Meyers also participated in the preparation of evidence and information presented in support of Plaintiff's pretrial detention. He is sued in his individual capacity.

18. Defendants John Doe Agents 1–9 are special agents of NCIS and the FBI, other than Meyers, who participated in the investigation of Plaintiff and in the preparation of evidence and information presented in support of Plaintiff's pretrial detention. Their identities are presently unknown to Plaintiff. Plaintiff will seek leave to amend this Complaint to name them when their identities are ascertained. Each is sued in his or her individual capacity.

19. At all relevant times, the Individual Defendants were "investigative or law enforcement officers" within the meaning of 28 U.S.C. § 2680(h), empowered by law to execute searches, to seize evidence, and to make arrests for violations of federal law.

## FACTUAL ALLEGATIONS

### *A. Plaintiff's Background*

20. Before January 2021, Plaintiff had served for approximately twelve years in the United States Army Reserve, attaining the rank of Sergeant (E-5).

21. Plaintiff was also employed for approximately three years by HBC Management as a security contractor at Naval Weapons Station Earle in Colts Neck, New Jersey ("NWS Earle").

22. Plaintiff served as a union shop steward for the security officers at NWS Earle. In that capacity, Plaintiff challenged HBC Management's refusal to accept employee grievances, and in December 2020 he was pursuing an unfair labor practice charge against HBC Management before Region 22 of the National Labor Relations Board, Case No. 22-CA-270078.

23. Plaintiff had no prior felony convictions.

### *B. January 6, 2021*

24. On January 6, 2021, Plaintiff traveled to Washington, D.C. to attend a political rally. He wore a suit and tie and carried no weapon.

25. Plaintiff entered the United States Capitol through doors that had already been forced open by others, and left after learning that someone had been shot. While at the Capitol, Plaintiff crossed paths with federal informants he believes to be named James Ehren Knowles and Michael Alan Jones.

26. Plaintiff was never charged with assaulting any person or with damaging or stealing any property.

### *C. The Investigation and Arrest*

27. Meyers was on duty as an NCIS Special Agent on January 6, 2021. Meyers maintained an office at NWS Earle. By his own testimony, before January 2021 Meyers had encountered Plaintiff several times a week, for two to three years, at the installation's entry control point, where Plaintiff checked his credentials.

28. On January 12, 2021, after receiving information concerning Plaintiff from NWS Earle security or HBC Management, Meyers and NCIS Special Agent Anthony Golt went to Plaintiff's residence aboard NWS Earle to look for Plaintiff, who was away on military orders. Plaintiff's roommate, Michael Jacobs ("Jacobs"),[1] answered the door. The agents, questioned Jacobs about Plaintiff, asked him to assist their investigation, and enrolled him as a confidential human source ("CHS").

29. After questioning Jacobs, the agents contacted HBC Management again concerning Plaintiff, and NCIS and the FBI opened a joint investigation of Plaintiff.

[1] This is a pseudonym for Plaintiff's roommate and not his actual name.

30. On January 14, 2021, NCIS agents fitted Jacobs with a body wire, and Jacobs, acting at their direction, recorded a conversation with Plaintiff.

31. The government quoted and characterized that recording in its emergency motion for a stay of the order releasing Plaintiff and in its opposition to Plaintiff's motion for release, and relied on those characterizations as evidence that Plaintiff was dangerous. No transcript of the recording was made part of the record on Plaintiff's appeal from the detention order, and the Court of Appeals noted that all quotations from the recording before it were as presented by the parties. *United States v. Hale-Cusanelli*, No. 21-3029 (D.C. Cir. July 7, 2021).

32. An FBI record dated January 14, 2021, converting the investigation of Plaintiff to a preliminary investigation, states that "on January 7, 2021, a NCIS CHS reported" that Plaintiff had attended the protests in Washington and had shown the CHS cell phone videos. Upon information and belief, either NCIS was receiving information concerning Plaintiff from a confidential source on January 7, 2021, five days before the contact described in Paragraph 28, which was never disclosed in the Criminal Action, or the government's sworn account of how and when its source came forward was inaccurate.

33. On January 15, 2021, Plaintiff was arrested at or near NWS Earle by a team of armed federal agents, in the presence of his co-workers.

34. Plaintiff waived his Miranda rights and submitted to a custodial interview by NCIS and FBI agents, including Meyers.

35. The Criminal Complaint charged Plaintiff with civil disorder under 18 U.S.C. § 231(a)(3) and with misdemeanor offenses under 18 U.S.C. § 1752(a)(1)–(2) and 40 U.S.C. § 5104(e)(2)(D) and (G). It was supported by a statement of facts sworn by Meyers.

36. In that statement of facts, Meyers attested that on January 12, 2021, he "received information from an individual who has been enrolled as a Confidential Human Source ("CHS") with NCIS." The statement did not disclose that NCIS agents had sought out that individual at Plaintiff's residence that day and enrolled him only after questioning him there, or that NCIS had received information concerning Plaintiff from HBC Management.

### *D. The Detention Proceedings*

37. Following his arrest, a United States Magistrate Judge in the District of New Jersey ordered Plaintiff released on conditions.

38. On January 19, 2021, the government moved in this District for an emergency stay and review of the release order. The stay was granted the same day.

39. In its emergency motion and in its opposition to Plaintiff's release, the government presented the CHS as an individual who had come forward to report Plaintiff, and did not disclose that NCIS agents had sought out the CHS at Plaintiff's residence and enrolled him there.

40. In seeking Plaintiff's detention, the government also relied on Plaintiff's possession of a copy of *The Turner Diaries*, a novel, which the agents had identified in the search of Plaintiff's residence.

41. On January 20 and 21, 2021, after the government had obtained the stay, NCIS special agents interviewed forty-four employees at NWS Earle about Plaintiff.

42. The interviews were not directed at any element of any offense with which Plaintiff was charged. None of the charged offenses concerned Plaintiff's conduct at NWS Earle or his opinions. Instead, the agents asked the interviewees about Plaintiff's "ideology," and summarized in a Report of Interview the interviewees' characterizations of Plaintiff's views, remarks and appearance.

43. Many of the interviewees stated that they did not know Plaintiff, or knew him only in passing. Many were naval personnel stationed at NWS Earle rather than Plaintiff's co-workers, and many repeated what others had told them. The Report of Interview, as produced, was largely illegible and redacted the names of the interviewees, so that none of its characterizations could be tested.

44. When the interviews were conducted, Plaintiff's employment with HBC Management had been terminated, and the interviewees' own employment depended on HBC Management and the Navy.

45. The government used that Report of Interview to oppose Plaintiff's release.

46. When a supervisor of Plaintiff at NWS Earle, Sergeant Getz, submitted a letter in support of Plaintiff's release, which Plaintiff filed with the Court on March 7, 2021, NCIS special agents traveled to Sergeant Getz's home two days later, on March 9, 2021, to question him about that letter. Three days after that visit, the government used its results to discredit the letter.

47. On March 23, 2021, the Court ordered Plaintiff detained pending trial. The Court denied reconsideration on April 28, 2021, and the Court of Appeals affirmed on July 7, 2021.

48. Upon information and belief, the Individual Defendants undertook the conduct described in Paragraphs 27 through 32, 36, 39 and 41 through 46, in coordination with HBC Management, with which Plaintiff was then engaged in the labor dispute described in Paragraph 22, for the purpose of generating material concerning Plaintiff's beliefs and speech that would secure and prolong his detention, and not for the purpose of investigating any charged offense.

49. Plaintiff remained detained without bail from January 15, 2021 through trial.

### *E. Indictment, Trial and Sentence*

50. On January 29, 2021, a grand jury returned a seven-count indictment, which charged, among other things, obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2).

51. On March 9, 2022, a grand jury returned a five-count Superseding Indictment, which omitted the civil disorder charge and retained the § 1512(c)(2) charge as Count One. The remaining four counts were misdemeanors.

52. On May 27, 2022, following trial, the jury returned a verdict of guilty on all five counts.

53. At sentencing on September 22, 2022, the Court calculated an advisory guideline range of 21 to 27 months. The government sought a sentence of between seventy and eighty-seven months' imprisonment. The Court imposed a sentence of 48 months' imprisonment on Count One of the Superseding Indictment, 12 months on each of Counts Two and Three of the Superseding Indictment, and 6 months on each of Counts Four and Five of the Superseding Indictment, all to run concurrently, and recommended designation to FCI Fort Dix.

54. Absent Count One of the Superseding Indictment, the longest term imposed on any count was 12 months.

### *F. Plaintiff's Ear Infection and the Denial of Specialist Care*

55. In or about early November 2021, while Plaintiff was detained in the District of Columbia pending trial in the Criminal Action, Plaintiff developed an ear infection. The infection persisted continuously from that time through Plaintiff's release.

56. Plaintiff's counsel in the Criminal Action raised Plaintiff's need for evaluation by an ear, nose and throat specialist on the record on or about February 28, 2022, and Plaintiff sought temporary release to obtain that evaluation. Release was not granted, and Plaintiff received no specialist evaluation while detained in the District of Columbia.

57. In or about November 2022, Plaintiff was transferred into BOP custody at FCI Fort Dix.

58. When Plaintiff arrived at FCI Fort Dix, his ear infection had persisted for approximately one year through multiple courses of antibiotics, and had not resolved.

59. Plaintiff sought medical care at FCI Fort Dix for the infection, which persisted despite treatment with antibiotics.

60. A BOP clinician at FCI Fort Dix, identified in Plaintiff's records as C. Ibe, determined that Plaintiff required evaluation by an ENT and submitted a referral for that evaluation.

61. On or about March 9, 2023, BOP denied the ENT referral. In place of specialist evaluation, BOP prescribed Plaintiff another course of antibiotics and scheduled a follow-up visit approximately one month later.

62. Plaintiff's infection continued. Plaintiff made further requests for ENT evaluation, including a request for a medical furlough to obtain it. BOP denied those requests.

63. BOP never provided Plaintiff with an ENT evaluation during his incarceration at FCI Fort Dix, which continued through his release on or about December 15, 2023.

64. BOP owed Plaintiff a duty to provide for his safekeeping, care and protection, 18 U.S.C. § 4042(a)(2)–(3), and to provide medical care in accordance with the applicable standard of care.

65. The applicable standard of care required that a patient with an ear infection persisting through repeated courses of antibiotic treatment be referred for, and receive, specialist evaluation and treatment. That requirement applied with particular force to Plaintiff, whose infection had already persisted for more than a year when he arrived at FCI Fort Dix.

66. As a result of the untreated infection, Plaintiff has sustained hearing loss, which is permanent. That loss was caused or materially worsened during Plaintiff's confinement at FCI Fort Dix, after BOP denied the ENT referral.

67. While incarcerated, Plaintiff experienced diminished hearing during episodes of active infection, which he understood to be a symptom of the infection that would resolve with treatment. Plaintiff first learned that he had sustained permanent hearing loss, and that it resulted from the failure to provide specialist evaluation and treatment, on or about June 30, 2025, when an ENT evaluated him following his release. Before that evaluation, Plaintiff did not know, and in the exercise of reasonable diligence could not have known, that his hearing loss was permanent or what had caused it.

68. Had BOP provided timely ENT evaluation and treatment, Plaintiff's hearing loss would have been prevented or substantially reduced.

### *G. Vacatur and Dismissal*

69. On June 28, 2024, the Supreme Court held in *Fischer v. United States* that § 1512(c)(2) requires proof that the defendant impaired, or attempted to impair, the availability or integrity for use in an official proceeding of records, documents, objects or other things used in the proceeding. 603 U.S. 480 (2024).

70. The prosecution did not allege, and the evidence at trial did not show, that Plaintiff impaired or attempted to impair any record, document, object or other thing used in the certification proceeding.

71. On November 19, 2024, citing *Fischer*, the United States and Plaintiff jointly moved the Court of Appeals to vacate Plaintiff's conviction on Count One. On December 19, 2024, the Court of Appeals vacated that conviction and remanded.

72. On January 20, 2025, the President issued a proclamation granting pardons for offenses relating to the events at or near the United States Capitol on January 6, 2021. On January 21, 2025, the government moved to dismiss the indictment with prejudice, citing the proclamation. On January 24, 2025, the Court granted the motion and dismissed the case with prejudice.

***H. Plaintiff's Injuries***

73. Plaintiff was continuously detained for approximately 1,064 days, approximately 699 of which exceeded the longest term imposed on any count other than Count One.

74. Throughout his detention in the District of Columbia, Plaintiff was subjected to prolonged periods of solitary confinement; was denied communion and religious services; was restricted in legal and family visitation, in correspondence, and in access to the law library; was denied outdoor recreation, sunlight and fresh air; was denied adequate nutrition; had privileges conditioned on receiving a COVID-19 vaccine; and was held in unsanitary conditions and denied basic grooming for more than a year. Plaintiff endured those conditions because of the prolonged detention described above.

75. On September 27, 2022, the Department of the Navy proposed Plaintiff for debarment. On November 14, 2022, the Navy debarred Plaintiff from all federal contracts, benefits and federally backed loans for a period running from June 29, 2021 through June 28, 2031. The Navy terminated the debarment on March 10, 2025.

76. Plaintiff lost his employment at NWS Earle, the income it provided, and his housing there.

77. While Plaintiff was detained, and before any adjudication of the charges against him, the Army initiated proceedings to separate Plaintiff from the United States Army Reserve. Upon information and belief, those proceedings were conducted without notice to Plaintiff and

without his participation. The Army separated Plaintiff with an Other Than Honorable characterization of service, reduced him in grade (down to an E1/Private), and terminated his pay. Plaintiff thereby lost his drill pay, his rank, his path to a military retirement, and his eligibility for veterans' benefits, including VA-guaranteed home loans. Plaintiff's characterization of service has not been upgraded, and he has not been reinstated or received back pay.

78. Plaintiff has sustained permanent hearing loss, which impairs his ability to communicate and his enjoyment of life.

79. Plaintiff has suffered, and continues to suffer, severe emotional distress, humiliation, reputational harm and economic loss.

## AS AND FOR A FIRST CAUSE OF ACTION

*(Medical Negligence under the FTCA, Against the United States)*

80. Plaintiff repeats and realleges Paragraphs 1 through 79 as though fully set forth herein.

81. Under the law of New Jersey, where the acts and omissions occurred, a private person providing medical care to a patient in his custody would be liable to that patient for the negligent provision of care.

82. BOP employees, acting within the scope of their employment, owed Plaintiff a duty to exercise the degree of care, knowledge and skill ordinarily exercised by medical providers in like circumstances.

83. BOP employees breached that duty by, among other things, denying the ENT referral made by Plaintiff's treating clinician for a patient whose infection had already persisted for more than a year, substituting repeated courses of treatment that had already failed, denying Plaintiff's further requests for specialist evaluation, and failing to provide specialist evaluation or treatment by any means at any time before Plaintiff's release.

84. As a direct and proximate result of that breach, Plaintiff sustained permanent hearing loss, pain and suffering, emotional distress, loss of enjoyment of life, and past and future medical expenses.

85. Plaintiff will serve an affidavit of merit to the extent required by N.J. Stat. Ann. § 2A:53A-27.

**AS AND FOR A SECOND CAUSE OF ACTION**

*(Abuse of Process under the FTCA, Against the United States)*

86. Plaintiff repeats and realleges Paragraphs 1 through 79 as though fully set forth herein.

87. The Individual Defendants were investigative or law enforcement officers of the United States acting within the scope of their employment, and the United States is liable for their abuse of process pursuant to 28 U.S.C. §§ 1346(b) and 2680(h).

88. After criminal process had issued against Plaintiff, including the arrest warrant, the Criminal Complaint and the proceedings on the government's motion for review of Plaintiff's release order, the Individual Defendants used that process for an ulterior purpose not proper in its regular prosecution: to compile and present Plaintiff's beliefs, speech and associations as a basis for detaining him, and thereby to punish him for them.

89. In furtherance of that purpose, the Individual Defendants committed acts not proper in the regular conduct of the proceeding, including canvassing forty-four of Plaintiff's co-workers about his ideology rather than about any element of any charged offense, summarizing their characterizations in a report prepared for use against Plaintiff's release, and confronting at his home a witness who had submitted a letter in support of Plaintiff's release.

90. Under the law of New Jersey, where the Individual Defendants' investigative acts occurred, and of the District of Columbia, where the process was invoked and its abuse

consummated, a private person who so perverted legal process would be liable to the person injured.

91. As a direct and proximate result, Plaintiff was detained for a prolonged period, and suffered loss of liberty, emotional distress, reputational harm and economic loss.

## AS AND FOR A THIRD CAUSE OF ACTION

*(Fifth Amendment Due Process under Bivens, Against the Individual Defendants)*

92. Plaintiff repeats and realleges Paragraphs 1 through 79 as though fully set forth herein.

93. The Due Process Clause of the Fifth Amendment prohibits federal officers from depriving a person of liberty on the basis of evidence they know to be false or deliberately misleading.

94. The Individual Defendants, acting under color of federal law, deprived Plaintiff of liberty by knowingly presenting, or causing to be presented, in support of Plaintiff's detention, characterizations of the CHS recording, of the circumstances under which the CHS came to cooperate with NCIS and the source of the information that initiated the investigation, and of the co-worker interviews, that they knew to be selective and misleading.

95. That misleading evidence was material to, and caused, the detention of Plaintiff.

96. At all relevant times, it was clearly established that a federal officer may not cause a person to be deprived of liberty through the knowing use of false or misleading evidence.

97. As a direct and proximate result, Plaintiff suffered loss of liberty, emotional distress, reputational harm and economic loss.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor as follows:

(a) On the First and Second Causes of Action, against the United States, compensatory damages in an amount to be determined at trial, not to exceed the sums certain stated in Plaintiff's administrative claims, 28 U.S.C. § 2675(b);

(b) On the Third Cause of Action, against the Individual Defendants, compensatory damages in an amount to be determined at trial, and punitive damages;

(c) Costs of suit, and interest as permitted by law; and

(d) Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on the Third Cause of Action. Plaintiff acknowledges that the First and Second Causes of Action, as claims against the United States under the FTCA, will be tried to the Court. 28 U.S.C. § 2402.

Dated: October 6, 2026

Respectfully submitted,

/s/*Alexander Lonstein*

Alexander Lonstein
RAISER, KENNIFF & LONSTEIN, P.C.
99 Park Avenue, Suite 1530
New York, NY 10016
alexander@rkl.law